TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ALEXIS D. GREGORIAN
CLAIRE YAN (Cal. Bar No. 268521)
Trial Attorneys
United States Department of Justice
Fraud Section, Criminal Division
    300 North Los Angeles Street, Suite 2001
    Los Angeles, California 90012
    Telephone: (202) 768-1172
    E-mail:    alexis.gregorian@usdoj.gov
            claire.yan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>ANDREI SOTNIKOV,<br><br>        Defendant. | No. 2:18-CR-00375-AB-5<br><br>GOVERNMENT'S SENTENCING MEMORANDUM REGARDING DEFENDANT ANDREI SOTNIKOV<br><br>Date:  October 29, 2021<br>Time:  1:30 p.m. |

     Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and the Fraud Section of the Criminal Division of the U.S. Department of Justice, hereby files its Sentencing Memorandum with respect to Defendant Andrei Sotnikov.

//

//

1    This Sentencing Memorandum is based upon the attached memorandum

2 of points and authorities, the files and records in this case, and

3 such further evidence and argument as the Court may permit.

4  Dated: October 15, 2021          Respectfully submitted,

5                                    TRACY L. WILKISON
                                     Acting United States Attorney
6
                                     SCOTT M. GARRINGER
7                                    Assistant United States Attorney
                                     Chief, Criminal Division
8
                                         /s/
9                                    _____
                                     ALEXIS D. GREGORIAN
                                     CLAIRE YAN
10                                   Trial Attorneys, Fraud Section

11                                   Attorneys for Plaintiff
                                     UNITED STATES OF AMERICA
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

On April 7, 2021, defendant Andrei Sotnikov ("defendant"), pleaded guilty to Count Ten of the Indictment in this case, which charged him with receiving illegal remuneration for health care referrals, in violation of 42 U.S.C. § 1320a-7b(b)(1)(A). (Dkt. 236.)  In his plea agreement, defendant admitted that he entered into an agreement with co-defendant Irina Sadovsky, the owner and operator, and Pharmacist in Charge of, Five Star RX d/b/a Five Star Pharmacy ("Five Star Pharmacy") and Ultimate Pharmacy Inc. ("Ultimate Pharmacy") (collectively, "the Pharmacies"), whereby defendant would accept kickback payments from Sadovsky in return for referring Medicare patients to the Pharmacies.  (Id.)  The Pharmacies would then submit claims to Medicare drug plans for drugs purportedly dispensed to the Medicare patients referred by Sotnikov.

Between January 2014 and September 2017, Medicare drug plans paid Five Star and Ultimate Pharmacies approximately $4,362,279 on prescription drug claims the Pharmacies submitted for the patients referred by defendant.  The parties have calculated that at least approximately $768,342 of these payments was an improper benefit conferred on Five Star and Ultimate Pharmacies as a result of this scheme.

The government submits that the Court should accept the Guidelines calculation set forth in the plea agreement and the Presentence Investigation Report ("PSR"), which, after a 3-level reduction for acceptance of responsibility, results in a total offense level for the defendant of 19.  Based on the finding in the PSR that defendant is in criminal history category I, the applicable

Guidelines range would be 30-37 months.  The government is recommending a sentence at the low end of that Guidelines range, for a sentence of 30 months for defendant.

**II.   FACTUAL BACKGROUND**

**A.   Procedural Background**

On June 20, 2018, defendant was charged with one count of conspiracy to pay and receive health care kickbacks, in violation of 18 U.S.C. § 371 (Count 9), and one count of receiving health care kickbacks, in violation of 42 U.S.C. § 1320a-7b(b)(1)(A) (Count 10). (Dkt. 1.)

On March 15, 2021, the parties executed a plea agreement, which was filed with the Court on March 16, 2021.  (Dkt. 236.)  On April 7, 2021, defendant entered a guilty plea to Count 10 of the indictment. (Dkt. 238.)  Sentencing is scheduled for October 29, 2021.  (Dkt. 261.)

**B.   Offense Conduct**

The plea agreement sets out the factual basis for defendant's guilty plea.  (Dkt. 236, Plea Agreement ["PA"] at 7-9.)  Defendant was a patient recruiter or a "marketer" for the Pharmacies.  Id. at 8.  Defendant agreed with Sadovsky, among others, to refer prescriptions for Medicare patients to the Pharmacies.  Defendant developed relationships with the owners and operators of various facilities, including senior living residences and nursing facilities, in order to obtain these referrals.  Id.  In exchange for the referral of these patients' prescriptions to the Pharmacies, Sadovsky paid defendant kickbacks.  Id.  Specifically, Sadovsky paid defendant approximately 40 percent of the profit made by Five Star and Ultimate Pharmacies on the prescriptions defendant referred to

2

1  the Pharmacies per month.  Id.  Between January 2014 and September

2  2017, Medicare paid the Pharmacies approximately $4,362,279 on

3  prescription drug claims submitted for the patients referred by

4  defendant.  Id.  At least approximately $768,342 of these payments

5  was an improper benefit conferred on the Pharmacies as a result of

6  this scheme.  Id.  Defendant admitted as part of the factual basis

7  that he committed these acts knowingly and willfully.  Id. at 9.

8  **III.  GUIDELINES CALCULATION**

9      The government submits that the Guidelines range for defendant

10 should be calculated as follows.  These Guidelines calculations are

11 consistent with the plea agreement:

12 Base Offense Level:               8            U.S.S.G. § 2B4.1

13 Value of Improper Benefit      14   U.S.S.G. §§ 2B4.1(b)(1)(B),
   Conferred of More than $550,000                2B1.1(1)(H)
14 But Less than $1,500,000

15     The government is recommending a 3-level reduction for

16 acceptance of responsibility pursuant to U.S.S.G. § 3E1.1.

17 Accordingly, defendant's total offense level should be 19.[1]

18     The parties do not have an agreement regarding defendant's

19 criminal history category.  PA ¶ 14.  Probation has determined that

20 defendant has a criminal history that falls within criminal history

21 category I.  PSR ¶ 62.

22     The United States Probation Office issued its PSR on June 4,

23 2021.  (Dkt. 245.)  The PSR agrees with the above Guidelines offense

24 calculation which the PSR then reduces by 3 levels for acceptance of

26 _____

27 [1] The plea agreement provides that defendant waives his right to
   appeal his sentence if the Court sentences defendant to a term of
   imprisonment within or below the range corresponding to an offense
28 level of 19 and the criminal history category calculated by the
   Court.  (PA ¶ 18.)

3

responsibility, for a total offense level of 19 (30-37 months).  PSR
¶ 116.

### A.   Value of the Improper Benefit Conferred

The evidence in this case demonstrates that Sadovsky paid
defendant a kickback equal to approximately 40 percent of the profit
that the Pharmacies made off of the amount Medicare reimbursed the
Pharmacies for the prescription drug claims for the patients
defendant illegally referred to the Pharmacies.  During the execution
of a search warrant at the Pharmacies in July 2017, agents seized a
file folder labeled "Sotnikov."  This folder contained what appeared
to be QuickBooks accounting software printouts as well as payment
stubs that, when paired together, demonstrate the calculations that
Sadovsky made in order to pay illegal kickbacks to defendant for his
referral of patient prescriptions to the Pharmacies.  These
calculations make clear that the defendant was paid 40 percent of the
profit made by the Pharmacies on the prescription drugs for the
patients that the defendant referred.  Moreover, when defendant was
arrested, he was interviewed and confirmed that he was paid 40
percent of the profits from the accounts he brought to Five Star
Pharmacy.

Bank records demonstrate that defendant was paid $307,336.79 in
checks during the relevant time period.  Since defendant was paid 40
percent of the profit the Pharmacies made on the prescription drugs
from his referrals, the profit to the pharmacies is calculated as
$768,342.  The parties agreed in the plea agreement that this is the
value of the improper benefit conferred to the pharmacies on the
kickback tainted claims under U.S.S.G. § 2B4.1.  PA ¶ 10.

4

1    The applicable Sentencing Guidelines section, U.S.S.G.

2    § 2B4.1, cross-references the U.S.S.G. § 2B1.1(b)(1) loss table where

3    the improper benefit conferred exceeds $6,500.  According to the

4    U.S.S.G. § 2B1.1(b)(1) loss table, an improper benefit conferred of

5    $768,342 results in a 14-level increase to the base offense level

6    because the amount is more than $$550,000 but less than $1,500,000.

7    **IV.   RESTITUTION**

8    The Court should order defendant to pay restitution to Medicare

9    in the amount of $768,342 pursuant to the Victim Witness Protection

10   Act.  See 18 U.S.C. § 3663(a)(3).  The parties agreed to this amount

11   in the plea agreement.  PA ¶ 6.  Consistent with the PSR, the

12   government submits that the Court should order defendant to make an

13   immediate payment of $1,000 towards this restitution obligation.  PSR

14   ¶ 113.

15   **V.    ANALYSIS OF THE SECTION 3553(a) FACTORS**

16   The federal statute governing sentencing requires district

17   courts to take the applicable Guidelines range into consideration

18   when sentencing, along with other sentencing factors enumerated by

19   Congress.  See 18 U.S.C. § 3553; United States v. Booker, 543 U.S.

20   220, 264 (2005) ("The district courts, while not bound to apply the

21   Guidelines, must consult those Guidelines and take them into account

22   when sentencing.").  When the Court determines a sentence, "the

23   Guidelines are the starting point and the initial benchmark." United

24   States v. Carty, 520 F.3d 984, 991 (9th Cir. 2008) (en banc)

25   (quotations omitted).  Once the Court calculates defendant's

26   Guidelines range, it must then consider the factors set forth in 18

27   U.S.C. § 3553(a) to decide if they support the sentence recommended

28   by Probation and the parties.  Id.  These factors include, among

5

others, (a) the nature and circumstances of defendant's offense and his history and characteristics; (b) the need for the sentence contemplated to, among other things, (i) reflect the seriousness of the offense, (ii) promote respect for the law and provide just punishment for the offense, (iii) afford adequate deterrence to criminal conduct, and (iv) protect the public from further crimes of defendant; and (c) the need to provide restitution to the victim of defendant's offenses.

The government submits that the Section 3553(a) factors support a sentence of 30 months in custody for defendant. Such a sentence would be "sufficient, but not greater than necessary" to comply with the purposes enumerated in 18 U.S.C. § 3553(a)(2), discussed further below.

### A.    Nature and Circumstances of the Offense

For several years, defendant illegally referred patient prescriptions from senior living residences and nursing facilities to Five Star and Ultimate Pharmacies in exchange for payment from Sadovsky for the referrals. Defendant did so with knowledge that receiving kickbacks for services reimbursed by Medicare was illegal; Medicare does not pay for claims tainted by kickbacks. It is illegal to pay kickbacks for items or services that are payable by a federal health care program, like Medicare, because kickbacks can lead to the corruption of medical decisionmaking, increased program costs, and improper patient steering.

The evidence in this case illustrates the dangers of introducing kickbacks into the doctor-patient-pharmacy relationship. During a recorded meeting between a cooperator and defendant on January 11, 2018, conducted in the Russian language, the cooperator claimed to

1  have a facility with patients who could be referred to a pharmacy by
2  defendant, and defendant offered a doctor who could "help" with
3  prescriptions.  Defendant also told the cooperator that defendant
4  needed to look at the cooperator's patients' medications to determine
5  their profitability.  These statements indicate that defendant had a
6  relationship with a doctor who wrote prescriptions for patients on
7  request based on how profitable the drugs are — not on the medical
8  need of the patients.  These statements also demonstrate how
9  kickbacks increase costs to the Medicare program.

10        Accordingly, defendant's crime was serious.  As a result of the
11  patient referrals the defendant illegally made to Five Star and
12  Ultimate pharmacies, Medicare paid the Pharmacies approximately
13  $4,362,279 on prescription drug claims.  This is money Medicare would
14  not have paid had it been aware that the claims were based on illegal
15  referrals.  Moreover, there is evidence that some of the
16  prescriptions that defendant referred to the pharmacies were not
17  medically necessary.  When defendant was arrested on June 27, 2018,
18  he had a large amount of prescription drugs in other people's names
19  in his possession.  These drugs were from patients at Pacifica Royale
20  Assisted Living Facility, one of the large facilities from which
21  defendant referred patient prescriptions to the Pharmacies.
22  Defendant told the arresting agents that these prescription drugs
23  were "unused" and he was going to dispose of them, although he
24  admitted that he also used some of these drugs for personal use.  The
25  fact that these drugs were "unused" demonstrates that they weren't
26  needed by the patients.  As a result, these drugs never should have
27  been prescribed to the patients, filled by the pharmacies, or paid
28  for by Medicare.  Schemes like defendant's threaten the viability of

the Medicare program by increasing costs and jeopardize Medicare's ability to provide much needed health care benefits to the elderly and disabled.

Thus, defendant's crime was serious and a sentence of 30 months is appropriate for defendant in this case.

**B.   History and Characteristics of the Defendant**

Defendant is 50 years old and resides with his wife and two sons.  PSR ¶ 79.  Defendant received his education in Russia but discontinued his studies before graduating from vocational school in order to pursue professional dancing.  Id. ¶¶ 88-90.  According to the PSR, defendant reports that he has a few health issues, including psoriasis, rapid heart rate, and stomach problems, which are controlled by medication.  Id. ¶ 82, 84.  Defendant reported no history of drug abuse and declined to speak about alcohol use.  (Id. ¶¶ 86-87.)

While defendant has a criminal history category of I, the evidence developed in this case demonstrates that defendant's illegal conduct is not limited to receiving kickbacks for patient referrals. During another recorded meeting with a cooperator on February 22, 2018, defendant stated that prior to receiving illegal kickbacks from Sadovsky for patient referrals, defendant claimed he was making $70,000 per month "recycling" medications.  Drug "recycling" refers to an illegal scheme whereby pharmacies and patients sell unused prescription drugs to an individual like defendant who repackages and sells these drugs as if they came from a wholesaler.  During the same meeting, Sotnikov explained that he helped Sadovsky launder money or "convert her cash."  Accordingly, defendant has a history of engaging in illegal conduct in addition to the charged conduct in this case.

None of defendant's history or characteristics warrant a variance from the low-end of the applicable sentencing guidelines range in this case.

**C.    Deterrence, Promoting Respect for the Law, and Punishing Defendant for Her Crime**

A sentence of 30 months is appropriate to deter others from engaging in similar illegal conduct.  Individuals who are engaged in illegal kickback schemes like this one are often educated or have other employment options, and make a calculated decision that the risk of being caught and punished is worth the illicit proceeds that they can obtain.  A sentence of 30 months will serve to affect that calculus and cause individuals to decide that the money to be gained from an illegal kickback scheme is not worth the risk of incarceration.

Furthermore, a sentence of 30 months will promote respect for the law and will adequately punish defendant for his role in a conspiracy that resulted in payments from Medicare of more than $4,300,000.

**VI.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court:  (1) find defendant's total offense level is 19, consistent with the plea agreement and PSR; (2) assuming a criminal history category I, sentence defendant at the low end of the advisory Guidelines range for a sentence of 30 months in custody, along with a three-year period of supervised release, and a mandatory special assessment of $100; and (3) order defendant to pay restitution to Medicare in the amount of $768,342.